

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Apple iPhone
2023250600028901-0006

("Target Device")

)
)
)
)
)
)
)

Case No.    '23 MJ00852

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eric Velazquez, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:    March 10, 2023

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Apple iPhone
Seizure No. 2023250600028901-0006
(**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 7, 2023 up to and including March 9, 2023:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, fentanyl, and methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

1

**AFFIDAVIT**

2      I, Special Agent Eric Velazquez, being duly sworn, hereby state as follows:

3                                 **INTRODUCTION**

4      1.      I submit this affidavit in support of an application for a warrant to search the

5   following electronic device:

6                Apple iPhone

7                Seizure No. 2023250600028901-0006

8                (**"Target Device"**)

9   as further described in Attachment A, and to seize evidence of crimes, specifically

10  violations of Title 21, United States Code, Sections 952, 960, and 963 as further described

11  in Attachment B.  The requested warrant relates to the investigation and prosecution of

12  Nestor Ivan RAMIREZ ("Defendant") for importing approximately 2.18 kilograms (4.81

13  lbs.) of Cocaine, 5.14 kilograms (11.33 lbs.) of Fentanyl, and 11.34 kilograms (25 lbs.) of

14  Methamphetamine from Mexico into the United States.  The **Target Device** is currently in

15  the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite

16  120, San Diego, California 92154.

17     2.      The information contained in this affidavit is based upon my training,

18  experience, investigation, and consultation with other members of law enforcement.

19  Because this affidavit is made for the limited purpose of obtaining a search warrant for the

20  **Target Device**, it does not contain all the information known by me or other agents

21  regarding this investigation.  All dates and times described are approximate.

22                                 **BACKGROUND**

23     3.      I have been employed as a Special Agent with Homeland Security

24  Investigations (HSI) since August 2016. I am currently assigned to the HSI Office of the

25  Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law

26  Enforcement Training Center in Glynco, Georgia.

27     4.      During my tenure with HSI, I have participated in the investigation of various

28  narcotics trafficking organizations involved in the importation and distribution of

1  controlled substances into and through the Southern District of California. Through my

2  training, experience, and conversations with other law enforcement officers experienced in

3  narcotics trafficking investigations, I have gained a working knowledge of the operational

4  habits of narcotics traffickers, in particular those who attempt to import narcotics into the

5  United States from Mexico at Ports of Entry.

6      5.    I am aware that it is common practice for narcotics traffickers to work in

7  concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is

8  to smuggle controlled substances into the United States from Mexico by concealing the

9  controlled substances in vehicles or on persons entering the United States at Ports of Entry

10 such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the

11 importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico

12 frequently communicate with the individual responsible for importing the concealed

13 narcotics into the United States. These communications can occur before, during and after

14 the narcotics are imported into the United States. For example, prior to the importation,

15 narcotics traffickers frequently communicate with the transporter(s) regarding

16 arrangements and preparation for the narcotics importation. When the importation is

17 underway, narcotics traffickers frequently communicate with the transporter(s) to remotely

18 monitor the progress of the narcotics, provide instructions and warn accomplices about law

19 enforcement activity. When the narcotics have been imported into the United States,

20 narcotics traffickers may communicate with the transporter(s) to provide further

21 instructions regarding the delivery of the narcotics to a destination within the United States.

22     6.    Based upon my training, experience, and consultations with law enforcement

23 officers experienced in narcotics trafficking investigations, and all the facts and opinions

24 set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))

25 can and often do contain electronic evidence, including, for example, phone logs and

26 contacts, voice and text communications, and data, such as emails, text messages, chats

27 and chat logs from various third-party applications, photographs, audio files, videos, and

28 location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.   On March 9, 2023, at approximately 12:50 PM, Nestor Ivan RAMIREZ, ("RAMIREZ"), a United States citizen, entered the United States from Mexico through the Otay Mesa POE in vehicle lane 13. RAMIREZ was the driver, sole occupant, and registered owner of a 2002 Toyota Celica ("the vehicle") bearing California license plates.

8.   A Customs and Border Protection Officer (CBPO) was performing pre-primary inspections and spoke with RAMIREZ. While speaking with RAMIREZ, the CBPO noticed RAMIREZ's hand shaking as he blankly stared away and presented his entry documents for review. The CBPO obtained two negative Customs declarations from

RAMIREZ. The CBPO performed a cursory inspection of the vehicle and noticed a solid sound as he tapped the vehicle's rear quarter panel. A Canine Enforcement Team was contacted to further inspect the vehicle.

9. The Canine Enforcement Team responded to lane 13 and the Human and Narcotic Detection Dog alerted to the passenger side quarter panel of the vehicle. RAMIREZ and the vehicle were referred to secondary for further inspection.

10. In the secondary inspection area, a CBPO operating the Z-Portal X-Ray machine detected anomalies in the driver and passenger side rear quarter panels and driver's side floor of the vehicle.

11. A CBPO conducting a further inspection of the vehicle in secondary discovered 33 total packages concealed in the quarter panels of the vehicle. Two of the packages contained a substance, a sample of which field tested positive for the characteristics of cocaine, with a total approximate weight of 2.18 kgs (4.81 lbs.). Seven of the packages contained pills, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 5.14 kgs (11.33 lbs.). Twenty-four of the packages contained a substance, a sample of which field tested positive for the characteristics of Methamphetamine, with a total approximate weight of 11.34 kgs (25.00 lbs.).

12. RAMIREZ was placed under arrest at approximately 3:30 PM.

13. During a post-Miranda interview, RAMIREZ denied knowledge that the narcotics were in the vehicle. RAMIREZ stated that he was going to work at NASSCO.

14. RAMIREZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

15. The **Target Device** was found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the vehicle and inventory all the property seized from the Defendant and his vehicle. The phone was

1  discovered on the front seat of the vehicle.  During the interview, Defendant was shown

2  the Target Device and identified the Target Device as belonging to him.

3    16.    Based upon my experience and training, consultation with other law

4  enforcement officers experienced in narcotics trafficking investigations, and all the facts

5  and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

6  electronic mail (email) addresses, appointment dates, messages, pictures and other digital

7  information are stored in the memory of the **Target Device**.  In light of the above facts and

8  my experience and training, there is probable cause to believe that the Defendants were

9  using the **Target Device** to communicate with others to further the importation of illicit

10 narcotics into the United States.  Further, in my training and experience, narcotics

11 traffickers may be involved in the planning and coordination of a drug smuggling event in

12 the days and weeks prior to an event. Co-conspirators are also often unaware of a

13 defendant's arrest and will continue to attempt to communicate with a defendant after their

14 arrest to determine the whereabouts of the narcotics. Based on my training and experience,

15 it is also not unusual for individuals, such as the Defendants, to attempt to minimize the

16 amount of time they were involved in their smuggling activities, and for the individuals to

17 be involved for weeks and months longer than they claim. Accordingly, I request

18 permission to search the **Target Device** for data beginning on February 7, 2023 up to and

19 including March 9, 2023.

20                              **METHODOLOGY**

21    17.    It is not possible to determine, merely by knowing the cellular telephone's

22 make, model and serial number, the nature and types of services to which the device is

23 subscribed and the nature of the data stored on the device. Cellular devices today can be

24 simple cellular telephones and text message devices, can include cameras, can serve as

25 personal digital assistants and have functions such as calendars and full address books and

26 can be mini-computers allowing for electronic mail services, web services and rudimentary

27 word processing. An increasing number of cellular service providers now allow for their

28 subscribers to access their device over the internet and remotely destroy all of the data

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

///

///

///

1      **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

2          20.    Law enforcement has not previously attempted to obtain the evidence sought

3  by this warrant.

4                        **CONCLUSION**

5          21.    Based on the facts and information set forth above, I submit there is probable

6  cause to believe that a search of the **Target Device** will yield evidence of the Defendants

7  violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I

8  request that the Court issue a warrant authorizing law enforcement to search the item

9  described in Attachment A, and seize the items listed in Attachment B using the above-

10  described methodology.

11

12

13

14  I swear the foregoing is true and correct to the best of my knowledge and belief.

15

16                                    _____

17                                    Special Agent Eric Velazquez
                                      Homeland Security Investigations

18
   Sworn and attested to under oath by telephone, in accordance with Federal Rule of
19  Criminal Procedure 4.1, this 10th day of March 2023.

20

21  _____

22  Hon. Mitchell D. Dembin
   United States Magistrate Judge
23

24

25

26

27

28